NO. 12-04-00294-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS                                   §                 APPEAL FROM THE 
 
FOR THE BEST INTEREST                            §                 COUNTY COURT AT LAW
 
AND PROTECTION OF Q.E.                           §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Q.E. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered Q.E. committed to Rusk State
Hospital for a period not to exceed ninety days. Q.E. asserts the evidence is legally and factually
insufficient to support this order. We reverse and render.
 
Background
            On August 16, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit Q.E. to Rusk State Hospital for a period not to exceed
ninety days. The State supported its application with four certificates of medical examination for
mental illness. The first was prepared by Dr. Victoria Morgan. Dr. Morgan examined Q.E. on
August 15 and diagnosed her as suffering from psychotic disorder N.O.S. In her physician’s
certificate, Dr. Morgan stated that Q.E. is mentally ill, is likely to cause serious harm to others, and
is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial
mental or physical deterioration of her ability to function independently, which is exhibited by her
inability, except for reasons of indigence, to provide for her basic needs, including food, clothing,
health, or safety, and is unable to make a rational and informed decision as to whether or not to
submit to treatment. Dr. Larry Hawkins examined Q.E. on August 18 and diagnosed Q.E. with
psychotic disorder N.O.S. Dr. Hawkins’s opinion was the same as that of Dr. Morgan. On
August 24, Dr. Hawkins examined Q.E. again. He diagnosed Q.E. as suffering from schizophrenia
undifferentiated. On his physician’s certificate dated August 24, Dr. Hawkins omitted the conclusion
that Q.E. is likely to cause serious harm to herself. On August 25, Dr. Sethurama Srinivasan
examined Q.E., diagnosing her with bipolar I disorder manic. He was of the opinion that Q.E. is
mentally ill and is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs,
including food, clothing, health, or safety, and is unable to make a rational and informed decision
as to whether or not to submit to treatment. 
            At a hearing held on August 31, Dr. Hawkins testified, first reiterating that Q.E. is mentally
ill, suffering from psychotic disorder, N.O.S. Dr. Hawkins stated that Q.E. is likely to cause serious
harm to others, is suffering severe and abnormal mental, emotional or physical distress that would
make her incapable of functioning independently outside the hospital, and is unable to make a
rational and informed decision as to whether or not to submit to treatment. Dr. Hawkins based his
opinion on Q.E.’s disorganized thought processes. She talked to non-existent people and refused
medications at home. Q.E. threatened to kill her mother and had volatile outbursts. Q.E. had been
pacing at home and refused to wear clothes. Dr. Hawkins testified that in the few days prior to the
hearing, Q.E. had to be restrained for attacking other patients on two occasions. 
             On cross examination, Dr. Hawkins stated that Q.E. is able to feed herself, dress herself, and
take care of her personal hygiene. He said that Q.E. has the capacity to make an informed decision
as to whether or not to submit to medication treatment. Dr. Hawkins explained that his latest
physician’s certificate was in support of an outpatient motion. However, because Q.E.’s behavior
worsened within a few days prior to the hearing, the outpatient motion was withdrawn and the
motion for temporary inpatient commitment was filed. Dr. Hawkins stated that Rusk State Hospital
is the least restrictive environment available.
            Q.E. testified on her own behalf. She explained that others had pushed her around at the
hospital and that the attacks that Dr. Hawkins mentioned were instances of self defense. Q.E. stated
that she did chores at home, such as cleaning the house and cooking meals. She believes she is
competent and that there is nothing wrong with her. She denied threatening others. She stated she
takes her medications and goes to classes.
            On August 31, the trial court entered an order of temporary inpatient mental health services
after determining that the evidence supports the allegations that Q.E. is mentally ill, is experiencing
substantial mental or physical deterioration of her ability to function independently, which is
exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including
food, clothing, health, or safety, and is unable to make a rational and informed decision as to whether
or not to submit to treatment. The trial court ordered Q.E. committed to Rusk State Hospital for a
period not to exceed ninety days. This appeal followed.
 
Sufficiency of the Evidence
            In her sole issue, Q.E. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. She complains that the State did not present evidence of an overt act or
a continuing pattern of behavior to support the commitment based on the trial court’s findings. 



Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth
of the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. 
In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O.,131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of her ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that Q.E. is mentally ill. However, expert
testimony confirming mental illness, standing alone, will not support an involuntary commitment. 
 E.g., T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999, no pet.). The evidence shows that
Q.E. is likely to cause serious harm to others. However, the court did not find that Q.E. is likely to
cause serious harm to others, but rather, that she is experiencing substantial mental or physical
deterioration of her ability to function independently, which is exhibited by her inability, except for
reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and
is unable to make a rational and informed decision as to whether or not to submit to treatment.             The State did not offer evidence showing that Q.E. was unable to clothe, feed, or house
herself, or was unable to provide for her own health or safety. To the contrary, Dr. Hawkins
conceded that Q.E. was able to clothe and feed herself. She would know how to order food and give
and make change. He stated that she would know to seek medical attention if needed. He also stated
that she was taking her medications as requested. This evidence fails to establish that Q.E. is unable
to take care of her basic needs or make informed decisions regarding her care. Thus, the State failed
to provide evidence of an overt act or a continuing pattern of behavior necessary to support a
commitment based on the trial court’s findings. See In re C.O., 65 S.W.3d 175, 182 (Tex.
App.–Tyler 2001, no pet.). 
            Considering all the evidence in the light most favorable to the trial court’s finding, we
conclude a reasonable trier of fact could not have formed a belief or conviction that the trial court’s
findings were true. See In re J.F.C., 96 S.W.3d at 266. Therefore, the evidence is not legally
sufficient to support the trial court’s order. See id. We sustain Q.E.’s issue to the extent it relates
to legal sufficiency of the evidence to support the order of commitment. Therefore, we need not
reach her factual sufficiency complaint. See Tex. R. App. P. 47.1.
 
Disposition
            The evidence is legally insufficient to support the trial court’s order of commitment for
temporary inpatient mental health services. We reverse the trial court’s order of commitment for
temporary inpatient health services and render judgment denying the State’s application for court-ordered temporary inpatient mental health services. 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered April 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)